ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUN -9 2000

NANCY DOHERTY, CLERK

By_____
        Deputy

**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ENERGY INVESTMENT PARTNERSHIP NO. 1, *et al.,* | § § § § § § § | |
| *Plaintiffs,* | | CIVIL ACTION NO. _____ |
| vs. | | **300CV-1252G** |
| JEFFREY CLARKE, EDDIE M. LeBLANC III, ANNE MARIE O'GORMAN, R. M. "RICK" PEARCE, PATRICK S. WRIGHT, AND LARRY L. KELLER, | § § § § § § § § § | |
| *Defendants.* | | **JURY TRIAL DEMANDED** |

<u>PLAINTIFFS' ORIGINAL COMPLAINT</u>

Come now Energy Investment Partnership No. 1 (the "Partnership"), a Texas partnership, and its partners, Thomas O. Hicks, John R. Muse, Charles W. Tate, Jack D. Furst, Lawrence D. Stuart, Jr., Michael J. Levitt, David B. Deniger, and Dan H. Blanks, appearing individually on behalf of the Partnership (the "Partners"), (together, with the Partnership "Plaintiffs"), complaining of Jeffrey Clarke, Eddie M. LeBlanc, III, Anne Marie O'Gorman, R. M. "Rick" Pearce, Patrick S. Wright, and Larry L. Keller (collectively "Defendants"). As grounds therefor, Plaintiffs would respectfully show the Court the following:

<u>NATURE OF THE CASE</u>

1.      Defendants are or were officers of Coho Energy, Inc. ("Coho" or the "Company"). Coho is a publicly traded exploration and production company. Its oil and gas properties are located primarily in Mississippi and, to a far lesser extent, Texas (the "Gulf Coast Properties") and Oklahoma (the "Oklahoma Properties"). In public filings of Coho, Defendants made or caused to be made false

<u>Plaintiffs' Original Complaint</u> - Page 1

and misleading statements as to the proved oil and gas reserves purportedly owned by Coho. Specifically, and as more fully set forth below, Defendants materially and systematically overstated both the volumes and associated values of its claimed oil and gas reserves. Defendants thereby distorted the value of Coho's assets, its growth in reserves, its earning power, and its financial strength or flexibility. These statements affected the market price for Coho's shares and were made in, among other things, Coho's public filings with the Securities and Exchange Commission ("SEC"), including but not limited to its Form 10-K for the year ended December 31, 1997 (the "1997 10-K").

2.      In reliance upon such statements, and wholly without knowledge of the false and misleading nature of such statements, Plaintiffs purchased 2,162,084 shares of Coho common stock in various open market purchases and a privately negotiated transaction. These purchases were made between April 3, 1998 and May 12, 1998, at an average cost in excess of $7.00 per share (prior to a reverse 40 to 1 stock split) and at a total cost of $15,307,127.50. Coho's shares have since plummeted to less than $.25 per share (prior to a reverse 40 to 1 stock split). Plaintiffs have only recently discovered that the reserves were materially and falsely overstated in Coho's public filings. Plaintiffs would not have made such purchases had they known that the volume and associated values of such reserves were overstated. As a result, Plaintiffs have lost nearly $15 million in the value of their stock.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1367, and Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. §78aa) (the "Exchange Act."). This Court has and should exercise pendant jurisdiction over the common law claims asserted herein, inasmuch as they arise from the same events and transactions.

**Plaintiffs' Original Complaint - Page 2**

4.      This action arises under Sections 10(b), 18(a), and 20(a) of the Exchange Act [15 U.S.C. §§78j(b), 78r(a) and 78t(a)], and Rule 10b-5 of the SEC (17 C.F.R. § 240.10b-5) ("Rule 10b-5").

5.      Venue is proper in this district under Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(a) and (b).  Most, if not all, of the acts constituting the causes of action asserted herein occurred in this district, and Coho and the Partnership both maintain their principal places of business within this district.

6.      Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce in furtherance of the acts, omissions and communications alleged herein, including but not limited to interstate mail, interstate telephone and facsimile transmission, use of the NASDAQ, SEC filings, and the national securities markets.

## FACTS GERMANE TO ALL CLAIMS

7.      **The Parties.**  The Partnership is a Texas partnership with its principal place of business in Dallas, Texas.  Five of its Partners, Messrs. Hicks, Muse, Stuart, Blanks, and Deniger, are residents of Dallas, Texas, and/or have maintained residences in Dallas, Texas during all times referenced herein.  Mr. Tate resides in Houston, Texas.  Mr. Furst resides in Argyle, Texas.  Mr. Levitt resides in Englewood, New Jersey.

8.      Defendant Jeffrey Clarke, an individual resident of Dallas, Texas, was the Chairman, President, Chief Executive Officer and Director of Coho at all times material to the allegations in this complaint.  Clarke signed the 1997 10-K.

9.      Defendant Eddie M. LeBlanc, III, an individual resident of Pilot Point, Texas, was a Senior Vice-President and the Chief Financial Officer of Coho at all times material to the allegations in this complaint. LeBlanc signed the 1997 10-K.

10.     Defendant Anne Marie O'Gorman, an individual resident of Dallas, Texas, was a Vice-Senior President and the Corporate Secretary of Coho at all times material to the allegations in this complaint. As part of senior management, O'Gorman participated in, and was otherwise responsible for, Coho's preparation and filing of SEC forms.

11.     Defendant R. M. "Rick" Pearce, an individual resident of Dallas, Texas, was Executive Senior Vice-President and the Chief Operating Officer of Coho at all times material to the allegations in this complaint. As part of senior management, Pearce participated in, and  was otherwise responsible for, Coho's preparation and filing of SEC forms.

12.     Defendant Patrick S. Wright, an individual resident of Dallas, Texas, was a Vice-President at all times material to the allegations in this complaint. Wright was directly involved in Coho's booking of reserves.

13.     Defendant Larry L. Keller, an individual resident of Dallas, Texas, was a Vice-President at all times material to the allegations in this complaint. Keller was directly involved in Coho's booking of reserves.

14.     Coho is a publicly traded oil and gas exploration and production ("E & P") company. In 1998, its shares traded on the NASDAQ market. Coho is required to file periodic reports with the SEC, including annual Form 10-Ks and quarterly Form 10-Qs. As an E & P company, Coho owns leasehold interests in properties and in the oil and gas reserves to be produced therefrom. As represented in its public filings, Coho's strategy is to "acquire[] underdeveloped crude oil and natural

gas properties which have geological complexity and multiple producing horizons" and to use its amassed experience to "efficiently increase reserves and improve production rates" from such properties. Coho touts its 14 year experience with properties of this nature in Mississippi, asserting that this experience "gives the Company a competitive advantage in evaluating similarly situated acquisition prospects." To gain singular control over the timing and nature of such development, Coho "strives to operate and obtain high working interests in all its properties." Coho states that its development operations focus both on conventional activities, such as development drilling and recompletions of existing wells, and secondary recovery, such as water floods. Until late 1997, its principal operations were located predominantly in the Gulf Coast States of Mississippi, Louisiana, and, to a minimal degree, Texas. In late December 1997, Coho purchased Amoco Production Company's interests in a large block of producing properties located in southern Oklahoma and comprising 14 productive fields.

15.     Given the nature of its business, Coho's principal value resides in its interests in oil and gas reserves. Moreover, since Coho is engaged in oil and gas activities, Defendants are subject to and must comply with financial accounting and reporting standards prescribed by the SEC for such activities. These standards are set forth in 17 C.F.R. §210.4-10 and specifically address, among other things, how a company like Coho is to publicly report its reserves. The SEC standards for reporting reserves are specific. First, the only reserves that may be reported must be "proved" reserves, not "probable" reserves. In general, "proved reserves" are reserves that are found to be commercially recoverable. "Proved reserves" may be either "developed" or "undeveloped". "Developed" reserves means only those reserves expected to be recovered from existing completion intervals in existing wells or those that exist behind the casing of existing wells when the cost of making such reserves

available for production is relatively small relative to the cost of a new well. "Undeveloped" reserves means those reserves expected to be recovered from new wells on undrilled acreage or from existing wells where a relatively major expenditure is required for recompletion. In addition, SEC rules limit what "proved" reserves may be reported for proposed secondary recovery operations. Specifically, secondary recovery "proved" reserves can be included only after testing by a pilot project or after the operation of an installed program has confirmed through production response that increased recovery will be achieved. Coho, like all publicly trading energy companies, must strictly adhere to these SEC definitions in reporting reserves in SEC required public filings.

## THE MISREPRESENTATIONS AND OMISSIONS

16.     On or about March 30, 1998, Defendants arranged to have Coho file its 1997 10-K. A true and correct copy of the 1997 10-K is attached hereto as Exhibit "A" and incorporated herein. This report was filed with the SEC pursuant to the provisions of the Exchange Act.

17.     In the 1997 10-K and in the financial statements embodied therein, Defendants made or caused to be made numerous statements regarding the volume and associated value of oil and gas reserves purportedly owned by Coho as of December 31, 1997. With respect to its total operations from all properties, Defendants represented, among other things, that "[a]t December 31, 1997, the Company's total proved reserves were 119.7 MMBOE [million barrels of oil equivalent, assuming a ratio of six Mcf of gas to one barrel of oil] with a Present Value of Proved Reserves of $526.3 million." Defendants represented that "approximately 65%," *i.e.* 77.8 MMBOE, of these "proved reserves" were properly classified as "proved developed reserves." Defendants specifically represented that as of December 31, 1997, the Company "had net proved developed reserves of 84,228 MBOE [*i.e.,* 84.228 MMBOE] and net proved undeveloped reserves of 35,440 MBOE [*i.e.*

35.44 MMBOE]" and that the Present Value of Proved Reserves for each classification was $386.4 million and $139.9 million, respectively. Significantly, Defendants represented that under its accounting and reporting practices, "no values are given to . . . probable reserves that may be recovered from proved properties." Throughout the 1997 10-K, Defendants represented that Coho had achieved substantial, quantified growth in its proved reserves.

18.    With respect to the Oklahoma properties acquired from Amoco shortly before December 31, 1997 (the "Oklahoma Properties"), Defendants represented, among other things, that "the Company acquired approximately 50 MMBbls of crude oil and natural gas liquid reserves and approximately 33 BCF of natural gas reserves" and that "proved reserves totaled 58.8 MMBOE."

19.    With respect to Coho's Gulf Coast Properties, Defendants represented, among other things, that "proved reserves at Laurel [Field] totaled 15.3 MMBbls at December 31, 1997," that "reserves at the end of 1997 totaled 6.9 MMBOE" for its Martinville Field, that "reserves at December 31, 1997 totaled 6.1 MMBOE" for its Soso Field, and that "at December 31, 1997 the Summerland field had proved reserves of 7.0 MMBOE."

20.    At the time the foregoing statements were made or caused to be made by Defendants and in light of the circumstances under which they were made or caused to be made by Defendants, the foregoing statements were, and remain, false and misleading. The actual amounts of the Company's proved reserves, proved developed reserves, and proved undeveloped reserves properly attributable to the Oklahoma Properties and the Gulf Coast Properties as of December 31, 1997 were substantially and materially below the amounts stated by Defendants. Moreover, the actual growth in proved reserves achieved by Coho was substantially less than that represented. In making such statements or in causing such statements to be made in the 1997 10-K and published elsewhere,

Defendants made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. In doing so, Defendants employed devices, schemes, and artifices to defraud the public, including Plaintiffs, in inducing or encouraging the purchase of Coho's shares. The effect of such conduct of Defendants was to artificially inflate the value of Coho's shares. Defendants took such actions at a time when each possessed options to purchase shares in Coho on terms that would be lucrative in the event of an increase in the value of Coho's shares. As the group of senior management and those officers most directly involved with and knowledgeable about such properties, Defendants had a unique and exclusive opportunity to make such false and misleading statements and omissions and to employ such artifices to defraud.

21. Defendants have yet to fully disclose the nature and extent of the falsity of such statements or to provide in public filings and otherwise those facts necessary to make such statements not misleading.

22. Plaintiffs discovered the fact of the foregoing conduct this year. In the course of Coho's bankruptcy proceedings, Plaintiffs initially discovered, for the first time, that Defendants' statements regarding the Company's proved reserves for the Oklahoma Properties and the Gulf Coast Properties as reported in the 1997 10-K exceeded, by one-third or more, those established by proper reserve analyses. Plaintiffs have since discovered a pattern of conduct, the full extent of which is not yet known, by which Defendants have systematically overstated proved reserves for such properties both in the aggregate and for the constituent fields or reservoirs comprising such properties. Plaintiffs' investigation to date reveals the following.

**Plaintiffs' Original Complaint - Page 8**

23.   The Oklahoma Properties.  The Oklahoma Properties were previously owned and operated by Amoco. In 1997, Amoco decided to divest certain properties, including the Oklahoma Properties. The Oklahoma Properties consisted of proved developed and undeveloped properties, as well as unproved acreage. Amoco engaged an outside engineering firm to evaluate reserves for the Oklahoma Properties.  As a seller, Amoco had no motive to understate the volume or the value of the reserves attributable to such properties.  The stated proved reserves for the Oklahoma Properties as of December 1, 1997, were 39.0 MMBO and 32.6 BCF of gas, or a total of approximately 44.0 MMBOE.  Stated probable reserves were approximately 19.0 MMBOE.  In exploring a bid to purchase the Oklahoma Properties, Coho engaged another engineering firm to assist in evaluating the "upside potential" of the properties.  Although there appears to be no valid justification for shifting certain crude oil reserves from the "probable" category to the "proved" category and thereby increasing the proved oil reserves so substantially, the engineering firm retained by Coho reported to Defendants on December 17, 1997, that proved reserves were 46.6 MMBO and 31.8 BCF of gas, or a total of approximately 52.0 MMBOE.  This report noted Defendants' lack of access to complete records and warned against commencing any work projects until such records were received.  Upon information and belief, Coho did not assume operation of the Oklahoma Properties, did not receive any well or other operational files, and conducted no work projects in the two week period from December 17, 1997 to December 31, 1997.  Yet, in the annual report submitted to Coho's shareholders as of December 31, 1997, Defendants had inexplicably announced that Coho had acquired "proved reserves of 55.1 million equivalent barrels of oil."  Subsequently, in the 1997 10-K, Defendants stated proved reserves to be, as of that same date, 58.8 MMBOE.  This amount exceeds by 14.8 MMBOE the reserves stated by Amoco, by 6.8 MMBOE the amounts reported to Defendants

on December 17, 1997 by Coho's outside engineering firm, and by 3.7 MMBOE the amounts announced by Defendants in the 1997 annual report to shareholders.

24.    Plaintiffs have not fully determined the extent of Defendants' fraudulent inflation of proved reserves for the Oklahoma Properties. At a minimum, their statements of proved reserves are false and misleading in the following specific respects. One of the constituent properties in Oklahoma is the East Fitts Water Flood Project ("East Fitts"). East Fitts comprises three separate sands, the Viola, Hunton, and Cromwell. It had been operated as a secondary recovery water flood project for many years prior to Coho's acquisition. In 1992, Mobil Oil Company, Amoco's predecessor in title, ceased injecting water into the Cromwell Sand, and drastically reduced injections in the Hunton Sand, inasmuch as the producing wells from the sands had exceeded, in the case of the Cromwell, a 98.5% water cut, and in the case of the Hunton, a 94% to 97% water cut, and were rapidly declining and "watering out." Notwithstanding knowledge of the foregoing, and without proper support from a test pilot or water flood operation that would support inclusion, Defendants falsely stated that these projects had proved but not-producing reserves of 3.5 MMBOE attributable to a contemplated reactivation of this exhausted water flood operation in the Cromwell and Hunton reservoirs. Moreover, Defendants falsely inflated the present value associated with proved undeveloped reserves assigned to future wells to be drilled on the East Fitts property by utilizing production forecasts with initial producing rates of 50 barrels of oil per day and with front-weighted production wholly at odds with actual well performances in the field. By this latter means alone, Defendants falsely inflated the stated present worth of such proved undeveloped reserves by over $15 million.

25.    Another of the constituent properties is the East Velma Middle Block Sand Unit ("East Velma"). Defendants falsely assigned 6.1 MMBOE of proved undeveloped reserves to East

Velma as of December 31, 1997 based upon an anticipated secondary recovery operation. Defendants did so with information that the only water flood operation actually conducted on the East Velma block had shown no response and that drastic differences in the start-up reservoir conditions of an adjacent water flood project on an updip block ruled out a direct analogy. Coho's records reflect that Defendants did so with knowledge that the outside engineers engaged by Coho had originally assigned only 3.0 MMBOE in proved undeveloped reserves to East Velma. The proved undeveloped reserves that had been assigned by Amoco were 3.8 MMBOE. In short, Defendants arbitrarily and falsely overstated proved reserves for East Velma by nearly 3.1 MMBOE or 2.3 MMBOE, respectively.

26. Another of the constituent properties is the North Alma Deese Unit, an ongoing water flood project. Defendants falsely booked .9 MMBOE in proved undeveloped reserves, where none are warranted. Defendants booked these reserves to this project based on anticipated secondary recovery from subsequent phased operations which , as Coho's own records reflect, are speculative and contingent upon successful completion of earlier phased operations that have yet to be undertaken.

27. The Gulf Coast Properties. Defendants have engaged in a similar pattern of falsely inflating reserves for various properties comprising the Gulf Coast Properties. In the 1997 10-K, Defendants stated that, as of December 31, 1997, proved reserves for such properties totalled 41.9 MMBOE in Mississippi and 2.4 MMBOE elsewhere in the Gulf Coast. Among other things, Defendants falsely assigned proved undeveloped reserves for anticipated secondary recovery operations on various reservoirs without first conducting successful test pilots or actual water flood operations in such reservoirs that would support such an assignment. Moreover, Defendants assigned

proved undeveloped reserves to undrilled wells that did not offset productive units and were targeted for distinct and untested fault blocks. Upon information and belief, actual proved reserves for the Gulf Coast Properties are approximately half those stated by Defendants. Plaintiffs have not yet discovered the full extent of Defendants' fraudulent inflation of such reserves, but have learned of several examples.

28.     In the Cotton Valley Water Flood Project located in the Soso Field, Defendants assigned 2.4 MMBOE in proved undeveloped reserves and 1.3 MMBOE in proved developed reserves. Defendants assigned the former of these reserves based upon anticipated secondary recovery operations. Defendants included such reserves without having either a test pilot or installed program to support the anticipated secondary production results. To the contrary, the limited water flood operations conducted showed a negative response in that, after the water injection, production rapidly declined on certain wells and one well watered out prematurely requiring a reserve writedown. In addition, with respect to assigned proved developed reserves, Defendants ignored individual well performance and flattened and elongated the field decline curve thereby overstating reserves. Upon information and belief, actual proved developed reserves for such wells are less than half those stated in the 1997 10-K.

29.     In its Rodessa Water Flood Project located in the Martinville Field, Defendants assigned 1.3 MMBOE in proved developed reserves based on anticipated secondary recovery. Defendants did so without having a successful test pilot or installed program in this field demonstrating by confirmed production response that increased recovery will be achieved. Defendants improperly relied upon another field 30 miles away to analogize potential recoveries in this Martinville Field, all contrary to SEC rules.

**Plaintiffs' Original Complaint - Page 12**

30.    In the Summerland Field, Defendants assigned proved developed reserves of 1.0 MMBOE to a horizontal well to be drilled in the Washita Fredericksburg -4A horizon.  Defendants did so without any volumetric study to support the existence of recoverable reserves of that magnitude within any reasonable drainage area of the well.  Moreover, compounding the falsity and misleading nature of the assigned reserves, Defendants additionally assigned .3 MMBOE of proved undeveloped reserves to a planned vertical well that would directly transect the path of the horizontal well draining the same area.

31.    In the Mooringsport Water Flood Project in the Laurel Field, Defendants falsely assigned proved non-producing reserves of 1.0 MMBOE to the project on the basis of anticipated secondary recovery from a water flood project.  Defendants did so without a successful test pilot or installed program in this field demonstrating by confirmed production response that increased recovery will be achieved.  Defendants sought to rationalize these stated proved reserves by analogizing the anticipated recoveries from the proposed water flood operations in this field to operations conducted in respect of geologically distinct formations with distinct reservoir characteristics.  Coho's records indicate, among other things, that Defendants had, a year before, sought to include such reserves as proved but had backed off after being advised by a retained outside engineering firm that doing so would violate SEC standards.  Coho's records further indicate that Defendants improperly included such reserves as of December 31, 1997 in the face of renewed objections of the engineering firm which noted the fact of "no pilot" and questioned the propriety of analogizing distinct reservoirs.

32.    In the Stanley Formation in the Laurel Field, Defendants falsely assigned proved undeveloped reserves of 1.8 MMBOE for five undrilled locations.  Only two of these locations even

arguably constituted offsets to producing wells. The balance of these proposed wells were geographically remote and were targeted for untested fault blocks. Records indicate that Coho's outside engineers would assign no proved reserves to these three wells. Records further indicate that, compounding the falsity of these reserves, Defendants applied unwarranted proved reserve assignments to each well to generate aggregate reserves that totaled nearly four times greater than those recommended by the outside engineers engaged by Coho.

33. Defendants have also engaged in a similar pattern of falsely inflating reserves and values for Gulf Coast Properties located outside Mississippi. For instance, Defendants falsely reported approximately 9.0 BCF of proved gas reserves in a Smackover sour gas field. Defendants have no basis to support assigning proved reserves of this magnitude or value to this sour gas field. In fact, the field was originally drilled and abandoned several decades ago by prior operators because of the high H2s (hydrogen sulfide) and CO2 (carbon dioxide) content of the gas, which made it commerically unattractive to produce, process and market. Defendants aggressively assign value to their proposed gas stream from wells in the field without any gas contract in place and without any basis to support the existence of a market in the area for such high sour gas production. In fact, the data support proved reserves of no more than 3.0 BCF of gas, or approximately one-third of the amount reported by Defendants.

34. Given the typical exchange between the management of an oil and gas producing company and outside engineers engaged to review reserve analyses, and Defendants' persistence in assigning reserves in the face of contrary recommendations or questions regarding non-compliance with SEC reserve-reporting regulations as detailed above, it is strongly inferrable that Defendants, and each of them, acted knowingly in the foregoing respects.

**Plaintiffs' Original Complaint - Page 14**

35.    All of the above representations and omissions were materially false or misleading. Each of the Defendants either knew of, or was reckless in disregarding, the false or misleading nature of these statements and omissions. Plaintiffs relied on these representations and omissions when they purchased Coho's stock. If Defendants had accurately disclosed information relating to its reserves and the values associated with such reserves or provided additional information necessary to make such statements not misleading in the context in which they were made, Plaintiffs would not have purchased any of Coho's stock.    Further, since Coho was traded on an efficient market in the form of NASDAQ, reliance is inferred based on Defendants' fraud on the market during the period when Plaintiffs acquired Coho's stock.

## INAPPLICABILITY OF SAFE-HARBOR PROVISION

36.    Section 21E of the Exchange Act, 15 U.S.C. §78u-5, contains a "safe-harbor" provision under which a defendant can sometimes be excused from liability for some types of "forward-looking statements." The statements regarding Coho's proved reserves and the growth in proved reserves are not forward looking statements within the coverage of such provisions. Moreover, such statements are included in a financial statement prepared in accordance with generally accepted accounting principles and are thereby excluded from such provisions. Moreover, and in the alternative, the "safe-harbor" provisions do not apply if the forward-looking statements are not accompanied by meaningful disclosures of the factors that could impact the future results. Here, the "safe-harbor" provision does not apply because the misstatements contained in Coho's 1997 10-K are not accompanied by such meaningful disclosures.

37.     Alternatively, the "safe-harbor" provision does not immunize a defendant from liability for statements that the speaker knew were false when he or she made them.  Here, Defendants knew that the statements in Coho's 1997 10-K were false when those statements were made.

## EFFICIENT MARKET ALLEGATIONS

38.     At all relevant times, the market for Coho common stock was an efficient market for the following reasons, among others:

Coho common stock met the requirements for listing, and was listed and actively traded, on NASDAQ;

As a regulated issuer, Coho filed periodic public reports with the SEC and the NASDAQ;

Coho regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

Coho was followed by several securities analysts employed by major brokerage and research firms who wrote reports that were distributed to the sales force and certain customers of their respective firms.  Each of these reports was publicly available and entered the public marketplace.

39.     As a result of the above, the market for Coho securities promptly digested current information regarding Coho from all publicly available sources, and such information was reflected in Coho's stock price.

## First Claim: Violation of Section 18(a) Against All Defendants

40.     Each of the foregoing paragraphs is incorporated herein by reference.

41.     By making or causing to be made the foregoing false and misleading statements in the 1997 10-K, Defendants have violated Section 18(a) of the Exchange Act.  As more particularly set forth herein, Plaintiffs purchased their shares of stock in Coho in reliance upon such statements and without knowledge of the falsity and misleading nature thereof.  Plaintiffs purchased shares of stock at a price that was affected by such false and misleading statements and have suffered damages, including but not limited to the virtually complete loss in the value of such shares.  Plaintiffs were damaged by Defendants' misconduct because Plaintiffs paid artificially inflated prices for Coho's stock, and Plaintiffs would not have purchased Coho's stock at all if Plaintiffs had not been misled by Defendants' false and misleading statements and omissions. Plaintiffs seek, and are entitled under Section 18(a), to have the Court assess costs, including reasonable attorneys' fees, against the Defendants.

## Second Claim: Violation of Section 10(b) and Rule 10b-5 Against all Defendants

42.     Each of the foregoing paragraphs is incorporated herein by reference.

43.     As a result of Defendants' misrepresentations and omissions discussed above, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 of the SEC because Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (iii) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs as purchasers of the stock.

44.     Plaintiffs were damaged by Defendants' misconduct because Plaintiffs paid artificially inflated prices for Coho's stock, and Plaintiffs would not have purchased Coho's stock at all if Plaintiffs had not been misled by Defendants' false and misleading statements and omissions.

**Third Claim: Common Law Fraud Against All Defendants**

45.     Each of the foregoing paragraphs is incorporated herein by reference.

46.     Defendants made the misrepresentations and omissions discussed above with the intent that Plaintiffs would rely on them. These misrepresentations and omissions pertained to material facts, and were false and materially misleading when made. Defendants were fully aware that the misrepresentations and omissions pertained to material facts, and that they were false and materially misleading when made. Plaintiffs relied upon Defendants' misrepresentations and omissions when Plaintiffs decided to purchase Coho's stock, and Plaintiffs would not have purchased Coho's stock at all if Defendants had not made these material misrepresentations and omissions.

47.     Plaintiffs are seeking punitive damages against Defendants under Tex. Civ. Prac. & Rem. Code §§ 41.001 and 41.003 because Defendants committed the above actions fraudulently, maliciously, and with the specific intent to cause substantial injury to Plaintiffs. Alternatively, Defendants acted with an extreme degree of risk, considering the probability and magnitude of the potential harm to others, even though Defendants had actual, subjective awareness of the risk involved, and chose to proceed with conscious indifference to the rights and welfare of Plaintiffs.

48.     This claim arises under state law but is pendent to the federal securities law claims, which all arise from a common nucleus of operative facts.

**Fourth Claim: Negligent Misrepresentation Against All Defendants**

49.     Each of the foregoing paragraphs is incorporated herein by reference.

50.    Defendants made the misrepresentations and omissions discussed above negligently, because Defendants should have known that public investors such as Plaintiffs would rely on them. These misrepresentations and omissions pertained to material facts, were made by Defendants in the course of conducting business, and were false and materially misleading when made. Defendants also should have known that the misrepresentations and omissions pertained to material facts, and that they were false and materially misleading when made.   Plaintiffs relied upon Defendants' misrepresentations and omissions when Plaintiffs decided to purchase Coho's stock, and Plaintiffs would not have purchased Coho's stock at all if Defendants had not made these material misrepresentations and omissions.

51.    This claim arises under state law but is pendent to the federal securities law claims, which all arise from a common nucleus of operative facts.

## PRAYER FOR RELIEF

52.    WHEREFORE, Plaintiffs request that, upon final trial of this matter, Plaintiffs have judgment against all Defendants jointly and severally for compensatory damages, punitive damages, all pre-judgment and post-judgment interest to which Plaintiffs are entitled by law, attorneys' fees and costs, and for such additional relief, both general and special, at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

## DEMAND FOR JURY TRIAL

53.    Plaintiffs hereby demand a jury trial in this case.

Respectfully submitted,

Mike McKool, Jr.
Texas State Bar No. 13732100
Gary J. Cruciani
Texas State Bar No. 05177300
Christopher J. Harrington
State Bar No. 24004688

**McKOOL SMITH, P.C.**

300 Crescent Court, Suite 1500
Dallas, Texas  75201
(214) 978-4000 (Telephone)
(214) 978-4044 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

F:\Share\Energy Investment\Pleadings\petition.wpd